Lisa M. Martens (CA SBN 195824)
Andrew M. Abrams (CA SBN 229698)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099
Email: martens@fr.com; abrams@fr.com

Attorneys for Plaintiff
CRICKET COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRICKET COMMUNICATIONS, INC., a Delaware corporation<br><br>          Plaintiff,<br><br>    v.<br><br>GLOBAL CRICKET VENTURES, a Mauritius corporation<br><br>          Defendant. | Case No.  **'11 CV0345 LAB WVG**<br><br>**COMPLAINT FOR:**<br><br>1. Trademark Infringement - 15 U.S.C. § 1114(1)<br>2. Trademark Infringement, Unfair Competition, and False Designation of Origin – 15 U.S.C. § 1125(a)<br>3. Cybersquatting in Violation of 15 U.S.C. § 1125(d)<br>4. Unfair Competition – Cal. Bus. & Prof. Code §§ 17200 *et seq*.<br>5. Common Law Trademark Infringement<br>6. Unfair Competition in Violation of California Common Law<br>7. Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

Case No.

For its Complaint against defendant Global Cricket Ventures, (hereinafter "Defendant" or "GCV"), plaintiff Cricket Communications, Inc. ("Plaintiff" or "Cricket") hereby states and alleges as follows:

## THE PARTIES

1.      Plaintiff Cricket Communications, Inc. is a corporation organized under the laws of Delaware, with a business address at 5887 Copley Drive, San Diego, California 92111.

2.      On information and belief, defendant Global Cricket Ventures is a Mauritius corporation having a principal place of business at 4th Floor, Ebene Skies, Rue de l'Institut, Ebene, Ebene 212121 Mauritius.

## NATURE OF THE ACTION

3.      This action by Cricket seeks permanent injunctive relief, damages and the transfer of the *<cricket.com>* domain name for willful infringement of Cricket's trademark and trade name CRICKET under the Lanham Trademark Act of 1946, as amended, Title 15, United States Code, §§ 1051, *et seq*. (the "Lanham Act"), for infringement and unfair competition under 15 U.S.C. § 1125(a), California common law and California Business & Professions Code §§ 17200, *et seq*., and for cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

4.      Cricket is a leading provider of unlimited wireless services, and has revolutionized the telecommunications industry through its development of a simple, affordable wireless service offering consumers and local businesses a flat-rate unlimited service over the latest technology, high-quality, all-digital wireless network.

5.      Cricket is the owner of U.S. Federal Trademark Registration Nos. 2,359,370, 2,363,821, 2,359,369 and 3,325,188 for the mark CRICKET, with use of the marks beginning as early as March 1999 for wireless telecommunications products and services.

6.      Since its first use in commerce in March 1999, the CRICKET trademark for wireless telecommunications products and services has become an extremely popular and widely recognized brand.  Cricket's total revenues in the United States were over 2.38 billion dollars for the year ending on December 31, 2009.  As of December 31, 2009, Cricket's wireless telecommunications services were offered in 35 states, and had approximately 5 million customers.  These CRICKET products and services are available in retail stores and on-line at various websites, including <*mycricket.com*>.

7.      On information and belief, Defendant purchased and registered the <*cricket.com*> domain name (the "Domain Name") on or around October 17, 2010 and began using the Domain Name to advertise telecommunications products and services, and to generate significant advertising and click-through revenue by trading on Cricket's considerable goodwill in its CRICKET trademark and trade name.

8.      Attached hereto as **Exhibit 1** are true and correct copies of printouts from the <*cricket.com*> website, along with printouts of web pages accessible through the advertisements and links on the site.  As established by this exhibit and on information and belief, Defendant's website has featured numerous revenue-generating links and advertisements relating to Cricket and its competitors in the telecommunications industry that when clicked, put money in Defendant's pocket at the expense of Cricket and consumers.

9.      Defendant's website is especially likely to cause consumer confusion as <*cricket.com*> has prominently displayed, without authorization, Cricket's distinctive logo as well as numerous links to Cricket's official home page and to articles relating to Cricket.  *See* **Exhibit 1**.  For this reason, and because the Domain Name is ***identical*** to Cricket's well-known mark, the public is likely to assume mistakenly that Defendant's Domain Name and the corresponding website are in some way connected with or sponsored by Cricket.

10.     Cricket has repeatedly notified Defendant in writing of Cricket's trademark rights and of Defendant's infringement thereof.  In addition, Cricket filed a Uniform Domain Name

1  Dispute Resolution (UDRP) Complaint with the National Arbitration Forum on December 29,

2  2010, seeking transfer of the Domain Name.  Despite these repeated notifications, Defendant has

3  persisted in maintaining its revenue-generating links and advertisements relating to the

4  telecommunications industry, forcing Cricket to file this Complaint.[1]

5         11.     Unless Defendant is enjoined from its confusingly similar use of the CRICKET

6  mark and domain, Cricket's trade name and trademark will be infringed, thereby destroying the

7  distinctive quality that Cricket has developed, to the detriment of Cricket and the public.

8

9                          **JURISDICTION AND VENUE**

10        12.     This is a civil action arising under the Lanham Act, Title 15, United States Code,

11  §§ 1114, 1125(a) and 1125(d), and under the statutory law and common law of the State of

12  California.  This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28

13  U.S.C. §§ 1331 (federal question jurisdiction), 1338(a) (trademark and unfair competition), and

14  supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1338(b)

15  and 1367(a).

16        13.     Personal jurisdiction over Defendant is vested and venue is proper in the United

17  States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391 because

18  a substantial part of the events giving rise to the claims herein occurred in this District.  On

19  information and belief Defendant is advertising, marketing and promoting wireless

20  telecommunications services under an infringing trademark and domain name in this District.

21        14.     On information and belief, Defendant has used an infringing trademark and

22  domain name within this State and in this District in connection with the advertising, marketing

23  and promotion of wireless telecommunications services and thereby purposefully availed itself of

24  the privilege of doing business in this State and in this District.

25  ---

[1] After Cricket filed the UDRP Complaint, Defendant attempted to "whitewash" certain infringing aspects of the

26  <cricket.com> website.  Yet, in addition to the fact that Defendant is liable for its past infringement, Defendant's
   website continues to feature multiple advertisements and links to wireless telecommunications goods and services,

27  some of which continue to feature the CRICKET trademark.

28                                    3                              Case No.

15.     The claims alleged herein arise out of or are related to Defendant's forum-related activities and the exercise of jurisdiction herein is otherwise reasonable.  Personal jurisdiction is also proper over Defendant in that the intentional and wrongful conduct described herein was directed at this District and at Cricket, which suffered damage within this District as a result of Defendant's intentional conduct.

16.     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1391(b) and (c), as the claims arise in this District and Defendant, a corporation, is subject to personal jurisdiction in this District.

### FACTS

17.     Cricket is the operating subsidiary of Leap Wireless International, and is a highly successful, nationwide telecommunications company providing innovative communications solutions.  Cricket offers customers unlimited "anytime" minutes within the Cricket calling area over an all-digital network.  Currently, there are over 5 million subscribers to the CRICKET-branded wireless services.

### Cricket's Valuable Trade Name and Trademark Rights

18.     Cricket has used and is using its CRICKET mark in commerce on and in connection with offering and selling its wireless telecommunications goods and services continuously since at least as early as March 1999.

19.     Since its first use in commerce in March 1999, the CRICKET trademark for wireless telecommunications products and services has become an extremely popular and widely recognized brand, with 5 million customers of its CRICKET-branded wireless telecommunications services as of the end of December 31, 2009.

20.     Since March 1999, Cricket has continuously and extensively promoted, offered and sold wireless telecommunications products and services in interstate commerce under the

CRICKET mark.  These CRICKET products and services are available in retail stores and on-line at various websites, including *<mycricket.com>*.

21.    On September 11, 1998, Cricket filed United States Trademark Application Serial No. 75/551,094 for the CRICKET mark.  On June 20, 2000, the United States Patent and Trademark Office (the "USPTO") issued Registration No. 2,359,370 to Plaintiff for the CRICKET mark for use on "wireless communication apparatus, namely, cellular telephones, telephone accessories, namely, fitted carrying cases, belt clips, battery chargers integrated wireless communication and computing apparatus, namely, cellular telephones, and telephone accessories, namely, fitted carrying cases, belt clips, battery chargers."  A true and correct copy of the certificate of registration for Registration No. 2,359,370 is attached hereto as **Exhibit 2**.

22.    On September 11, 1998, Cricket filed United States Trademark Application Serial No. 75/551,093 for the CRICKET mark.  On July 4, 2000, the USPTO issued Registration No. 2,363,821 to Plaintiff for the CRICKET mark for use in connection with "retail store services featuring wireless communication apparatus, namely, modems, cellular telephones, wireless local loop telephones and personal communication services (PCS) handsets with manuals and accessories sold as a unit therewith, telephone accessories, namely, fitted carrying cases, belt clips, battery chargers and batteries, and car kits consisting of audio speakers, microphones, and external antenna connectors; integrated wireless communication and computing apparatus namely, cellular telephones, wireless local loop telephones and personal communication handsets combined with a computer or personal digital assistant (PDA) device with manuals and accessories sold as a unit therewith; and telephone accessories, namely, fitted carrying cases, belt clips, battery chargers and batteries, and car kits consisting of audio speakers, microphones, and external antenna connectors."  A true and correct copy of the certificate of registration for Registration No. 2,363,821 is attached hereto as **Exhibit 3**.

23.    On September 11, 1998, Cricket filed United States Trademark Application Serial No. 75/551,090 for the CRICKET mark.  On June 20, 2000, the USPTO issued Registration No.

Case No.

2,359,369 to Plaintiff for the CRICKET mark for use in connection with "telecommunications services, namely, offering personal communications services via wireless networks; and providing cellular telephone services and personal communication network (PCN) services."  A true and correct copy of the certificate of registration for Registration No. 2,359,369 is attached hereto as **Exhibit 4**.

24.     On July 19, 2004, Cricket filed United States Trademark Application Serial No. 76/603,202 for the CRICKET logo.  On October 30, 2007, the USPTO issued Registration No. 3,325,188 to Plaintiff for the CRICKET logo for use in connection with all of the goods and services outlined in Paragraphs 9-11.  A true and correct copy of the certificate of registration for Registration No. 3,325,188 is attached hereto as **Exhibit 5**.  The marks and registrations described in Paragraphs 20-23 shall be referred to collectively herein as the "CRICKET Mark."

25.     Cricket's U.S. Registration Nos. 2,359,370, 2,363,821 and 2,359,369 for the CRICKET Mark have all become incontestable.  An incontestable registration serves as "conclusive evidence of the validity of the registered mark and of registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  15 U.S.C. § 1115 (b).

26.     Cricket's U.S. Registration No. 3,325,188 constitutes *prima facie* evidence of the validity of the registered mark and the registration thereof, of Cricket's ownership of the mark, and of Cricket's exclusive right to use the registered mark in commerce on or in connection with the goods and services specified in the certificate of registration, pursuant to 15 U.S.C. § 1057(b).

27.     In the more than ten years that Cricket has been continuously using the CRICKET Mark in interstate commerce, it has spent millions of dollars per year advertising and promoting its goods and services under the CRICKET Mark in a variety of media, including but not limited to television, radio, a wide variety of general circulation and specialized print media, billboards, trade shows and the Internet.  The goods and services offered by Cricket under the CRICKET

Mark have been the subject of many articles in general circulation newspapers and magazines, as well as radio, television and Internet broadcasts.

28.    By virtue of Cricket's long, continuous and exclusive use of the CRICKET Mark and the extensive and costly marketing efforts and repeated association of Cricket's goods and services with the CRICKET Mark, the CRICKET Mark has become widely recognized, and/or distinctive in the United States.  As a result, the consuming public in the United States recognizes the CRICKET Mark to identify Cricket's goods and services, and associates the mark with Cricket exclusively.  Because of the consistent quality of Cricket's goods and services marketed under and in association with the CRICKET Mark, Cricket has established considerable goodwill and reputation with respect to its goods and services.

29.    Cricket's use of the CRICKET Mark has been exclusive and continuous since long prior to the date of Defendant's registration of the Domain Name in October 2010.

## Defendant's Wrongful Conduct

30.    On information and belief, Defendant purchased and registered the Domain Name on or around October 17, 2010.  Defendant has been using the Domain Name and the associated website in order to generate advertising and click-through revenue by causing a likelihood of confusion with Cricket and its well-known trademark and trade name.

31.    On information and belief, Defendant was aware of Cricket's business and the CRICKET Mark at the time it purchased and registered the Domain Name and Defendant intended to earn illicit profits through revenue-generating links and advertisements relating to the telecommunications industry.

32.    As established by this **Exhibit 1** and on information and belief, Defendant's website has featured revenue-generating links and advertisements relating to Cricket and its competitors in the telecommunications industry that when clicked, put money in Defendant's pocket at the expense of Cricket and consumers.

33.    Defendant's *<cricket.com>* website has prominently displayed, without

authorization, Cricket's distinctive mark and logo as well as numerous links to Cricket's official

home page and to articles relating to Cricket.  *See* **Exhibit 1** and the screenshots below.



Case No.

34.     On information and belief, the Cricket logo which was set against the black background (*see* first screenshot above) was not placed by any third party advertising network. Rather, it was a static image placed by Defendant so that any banner advertising controlled by a third party advertising network would still feature the Cricket logo (*see* below for an example).



35.     On information and belief, the "More Cricket News" section of the *<cricket.com>* website was also controlled directly by Defendant.  On information and belief, Defendant intentionally placed numerous articles relating to Cricket in the news feed in order to influence Internet search results and thus drive increased Internet traffic to *<cricket.com>*.  Specifically, the placement of such articles was intended to cause *<cricket.com>* to appear in any search result for Cricket Wireless, thereby leading Internet users to mistakenly believe that the site was affiliated with Cricket.

36.     On information and belief, Defendant also placed numerous articles relating to Cricket in the news feed in order to influence the placement of banner advertising on the website. On information and belief, the intentional placement of Cricket content was intended to cause third party advertising networks to consider *<cricket.com>* a profitable candidate for the placement of Cricket and other telecommunications advertisements.

37.     As established by **Exhibit 1**, the images, articles, links and advertisements pertaining to Cricket and its competitors in the telecommunications industry far outnumbered the token placement of several articles relating to the sport of cricket.  While Defendant has recently attempted to "whitewash" certain infringing aspects of the *<cricket.com>* website, Defendant's present website continues to feature multiple advertisements and links to wireless telecommunications goods and services, some of which feature the CRICKET trademark.

38.     According to Alexa, a leading service providing information regarding website traffic, the top search queries that are relevant to the Domain Name include "cricket wireless," "get a wireless phone company," "wireless internet service," "cricket comm," "prepaid phones," "cricket wireless internet," and "cricket phones."  (Attached hereto as **Exhibit 6** is a true and correct copy of a printout from Alexa dated December 20, 2010.)

39.     The Alexa printouts further show that ***37.24%*** of web users visit Cricket's home page immediately after visiting Defendant's *<cricket.com>* website, and another 33.67% visit Google.  *Id.*  Along with the evidence regarding the leading search queries, this data signifies that virtually all of the visitors to Defendant's site are truly searching for Cricket.  This is because Internet users truly searching for information regarding the sport of cricket would seek out other sporting sites after accessing *<cricket.com>*.  Instead, the fact that a substantial portion of Internet users immediately turn to Cricket's official website indicates that they arrived at *<cricket.com>* by mistake.  The same is true for the Google visitors, who have not found what they are looking for and must search anew for Cricket.

40.     While approximately 37% of the visitors to Defendant's website ultimately end up at Cricket's home page (on information and belief earning Defendant considerable ill-gotten profits from the click-through fees), many others are led astray to the websites of competitors in the telecommunications industry, which have been extensively advertised on the *<cricket.com>* site.

41.     Examples of websites which have corresponded to the prominent links and

10                                                Case No.

advertisements on Defendant's *<cricket.com>* website include: *<shoppers.com>*, informing consumers in the website heading that they may "Compare Cricket Cell Phone prices, read reviews" and offering for sale AT&T, Verizon, Sprint and T-Mobile goods and services; *<wirefly.com>*, offering for sale HTC and Blackberry phones for use on the Verizon and AT&T networks; *<verizonwireless.com>*, the official homepage of the Verizon telecommunications network; *<puretalkusa.com>*, the homepage of a direct competitor of Cricket and a "nationwide provider of flexible, no contract cell phone plans"; *<google.com/nexus>*, promoting the new Smart Phone made by Google; *<cellulardeals.com>*, offering phones on the Verizon, Sprint and AT&T networks; and *<consumercellular.com>*, the homepage of a competing low-cost no-contract cellular service provider. *See* **Exhibit 1**. Additionally, multiple links and advertisements have led to Cricket's official homepage at *<mycricket.com>*. *Id.*

42. Defendant's continued use of the CRICKET name, mark and domain (hereafter, all references to the CRICKET name, mark and domain shall include Defendant's use of Cricket's trademark and logo as well as the CRICKET.COM name, mark and domain) deprives Cricket of the ability to control the quality of the goods and services marketed under its own CRICKET mark, and instead, places Cricket's valuable reputation and goodwill into the hands of Defendant, over whom Cricket has no control.

43. Cricket has not consented to Defendant's use of the CRICKET name, mark and domain, nor has Cricket sponsored, endorsed or approved of the goods and services offered and promoted by Defendant.

44. On December 29, 2010 Cricket filed a Uniform Domain Name Dispute Resolution (UDRP) Complaint with the National Arbitration Forum, seeking transfer of the Domain Name. Defendant's counsel responded with a letter demanding that Cricket immediately withdraw the UDRP Complaint, and explaining that Defendant is a professionally run global online media and broadcast company which holds exclusive licenses in digital and mobile rights for various cricket matches globally.

45.     Regardless of the general stated purpose of Defendant's company and its other commercial activities, which may involve the sport of cricket, Defendant's particular actions with respect to the <*cricket.com*> domain and website have infringed and continue to infringe Cricket's valuable intellectual property rights.  As set forth in **Exhibit 1**, Defendant's <*cricket.com*> website made only token references to the sport of cricket, and was filled with dozens of advertisements, links and articles relating Cricket and the wireless telecommunications industry.  *See* **Exhibit 1**.  Thus, the overwhelming commercial impression created by the <*cricket.com*> website was that of a wireless telecommunications site which may be affiliated with or sponsored by Cricket.

46.     On information and belief, the widely recognized and/or distinctive CRICKET Mark and the business of Cricket are known to Defendant and were known to Defendant at the time it began advertising and promoting wireless telecommunications goods and services under the CRICKET name, mark and domain.

47.     Defendant's first use of the CRICKET name, mark and domain in connection with the <*cricket.com*> domain and website occurred much later than Cricket's first use of the CRICKET Mark.

48.     On information and belief, Defendant's advertising and promotion of wireless telecommunications goods and services under the CRICKET name, mark and domain, and the goods and services offered by websites which correspond to the links and advertisements featured on Defendant's <*cricket.com*> website, are directed to the same consumers which comprise Cricket's customer base.

49.     Defendant's use of the CRICKET name, mark and domain is likely to cause confusion as to whether the wireless telecommunications goods and services advertised and promoted on Defendant's website originate from or are sponsored by Cricket, or whether there is an association or affiliation between Defendant and Cricket.

50.     On information and belief, Defendant has used the CRICKET name, mark and

12                                    Case No.

domain to capitalize on the valuable goodwill of Cricket's goods and services offered under the CRICKET Mark.

51.     Defendant has used and is using the CRICKET name, mark and domain in connection with the advertising and promotion of goods and services that are identical or highly related to Cricket's goods and services.

52.     Defendant has used the distinctive CRICKET logo in connection with the advertising and promotion of goods and services that are identical or highly related to Cricket's goods and services.

53.     Defendant's CRICKET.COM name, mark and domain is identical to Plaintiff's CRICKET name and mark in sight, sound and meaning.  In evaluating the likelihood of confusion between two marks, the use of the generic top-level domain ".com" is not relevant.

54.     The likelihood of confusion is further increased by the fact that Defendant's *<cricket.com>* website has contained numerous links to Cricket's official home page and to articles relating to Cricket.

55.     Defendant's use of the CRICKET name, mark and domain and Defendant's actions described herein are likely to lead to confusion, deception and/or mistake in the marketplace, the relevant industry, and the channels of trade for Cricket's goods and services.

56.     On information and belief, Defendant's use of the CRICKET name, mark and domain and its actions described herein have been, and continue to be, deliberate, willful, and with disregard to the rights of Cricket.

57.     Defendant's continuing conduct constitutes an ongoing threat to Cricket and the public.  Cricket has sustained and will continue to sustain irreparable injury as a result of Defendant's conduct, which injury is not compensable by the award of monetary damages.

58.     Unless Defendant is restrained and enjoined from engaging in its infringing conduct, Cricket will continue to suffer irreparable injury.

Case No.

## **FIRST CAUSE OF ACTION**

### **(Trademark Infringement – 15 U.S.C. § 1114(1))**

59.     Cricket incorporates herein by reference each and every allegation in the preceding paragraphs.

60.     Prior to Defendant's adoption and decision to use the CRICKET name, mark and domain in connection with the advertising and promotion of wireless telecommunications goods and services, Defendant either had actual notice and knowledge, or constructive notice (pursuant to 15 U.S.C. § 1072), of Cricket's ownership and registration of the CRICKET Mark.

61.     On information and belief, Defendant was aware of Cricket's business and the CRICKET Mark prior to Defendant's decision to use the CRICKET name, mark and domain in connection with the advertising and promotion of wireless telecommunications goods and services.

62.     On information and belief, in advertising and promoting the CRICKET name, mark and domain, Defendant deliberately and willfully used the CRICKET name, mark and domain in an attempt to trade off of the goodwill, reputation and selling power established by Cricket under the CRICKET Mark, and to create a false impression of association with Cricket.

63.     On information and belief, Defendant's advertising and promotion of wireless telecommunications goods and services under the CRICKET name, mark and domain is a deliberate and willful attempt to trade off of the goodwill, reputation and selling power established by Cricket under the CRICKET Mark, and is an attempt to create a false impression of association with Cricket.

64.     On information and belief, Defendant has advertised and promoted wireless telecommunications goods and services by using the CRICKET name, mark and domain through the same channels of trade and to the same consumers as Cricket advertises and promotes its goods and services under the CRICKET Mark.

65.     On information and belief, the wireless telecommunications goods and services

advertised and promoted by Defendant under the CRICKET name, mark and domain move through the same channels of trade, and are offered and/or sold through the same channels of distribution and to the same consumer groups as the goods and services that are offered and sold by Cricket under the CRICKET Mark.

66.     Cricket has not consented to Defendant's use of the CRICKET name, mark and domain.

67.     Defendant's unauthorized use of the CRICKET name, mark and domain is likely to cause consumers to be confused as to the source, nature and quality of the wireless telecommunications goods and services advertised and promoted by Defendant in connection with the CRICKET name, mark and domain.

68.     Defendant's unauthorized use of the CRICKET name, mark and domain, as set forth herein, facilitates the acceptance of the wireless telecommunications goods and services advertised and promoted on Defendant's website, not based on the quality of the goods and services promoted by Defendant, but on the association that the public is likely to make with Cricket and the reputation and goodwill associated with Cricket's goods and services.

69.     Defendant's unauthorized use of the CRICKET name, mark and domain deprives Cricket of the ability to control the quality of the goods and services marketed under its mark, and instead, places Cricket's valuable reputation and goodwill into the hands of Defendant, over whom Cricket has no control.

70.     The aforementioned activities of Defendant are likely to cause confusion or mistake, or to deceive consumers or potential consumers wishing to purchase Cricket's goods and services, and are also likely to confuse consumers as to an affiliation between Cricket and Defendant.

71.     The aforementioned acts of Defendant constitute federal trademark infringement in violation of 15 U.S.C. § 1114.

72.     Cricket has been, is now, and will be irreparably harmed by Defendant's

1  aforementioned acts of infringement, and unless enjoined by the Court, Defendant will continue
2  to infringe upon the CRICKET Mark.

3      73.    As a direct and proximate result of Defendant's infringing conduct, Cricket will
4  suffer irreparable injury to its business reputation and goodwill for which no adequate remedy
5  exists at law, and will it lose sales and profits in an amount not yet fully ascertained.

6      74.    On information and belief, Defendant's conduct complained of herein is
7  malicious, fraudulent, knowing, willful, and deliberate entitling Cricket to an accounting of any
8  of Defendant's profits, increased damages, and an award of its attorneys' fees and costs incurred
9  in prosecuting this action under 15 U.S.C. § 1117.

10

11      **SECOND CAUSE OF ACTION**

12      **(Trademark Infringement, Unfair Competition, and False**

13      **Designation of Origin – 15 U.S.C. § 1125(a))**

14      75.    Cricket incorporates herein by reference each and every allegation in the
15  preceding paragraphs.

16      76.    Cricket is informed and believes that Defendant has used the CRICKET name,
17  mark and domain, and has taken the other actions alleged above, to cause confusion or mistake,
18  to deceive the public as to the origin, sponsorship, association or approval of the wireless
19  telecommunications goods and services advertised and promoted on Defendant's website, and/or
20  to falsely imply an association with Cricket.

21      77.    Defendant's acts as alleged herein constitute, among other things, false
22  designations of origin, false or misleading descriptions of fact, or false or misleading
23  representations of fact, which are likely to cause confusion or mistake, or to deceive the public as
24  to the origin, sponsorship, association or approval of the wireless telecommunications goods and
25  services advertised and promoted by Defendant.

26      78.    Defendant's conduct constitutes trademark infringement and unfair competition in

27

28                          16                    Case No.

violation of 15 U.S.C. § 1125(a).

79.     Unless enjoined, Defendant will continue its infringing conduct.

80.     As a direct and proximate result of Defendant's infringing conduct, Cricket will suffer irreparable injury to its business reputation and goodwill for which no adequate remedy exists at law, and will lose sales and profits in an amount not yet fully ascertained.

81.     On information and belief, Defendant's conduct complained of herein is malicious, fraudulent, knowing, willful, and deliberate entitling Cricket to an accounting of any of Defendant's profits, increased damages, and an award of its attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION

### Cybersquatting – 15 U.S.C. § 1125(d))

82.     Cricket incorporates herein by reference each and every allegation in the preceding paragraphs.

83.     Defendant's *<cricket.com>* domain name is identical to and/or confusingly similar to Plaintiff's CRICKET mark.

84.     Defendant has used, and/or is using the Domain Name with the bad faith intent to profit from Plaintiff's CRICKET mark.

85.     On information and belief, Defendant possessed a bad faith intent to profit from Plaintiff's CRICKET mark at the time it registered the Domain Name.

86.     Defendant's bad faith is evidenced by the actions referenced in the allegations set forth in the preceding paragraphs.  Specifically, on information and belief, Defendant has used the Domain Name in order to divert consumers seeking Cricket's website to a site accessible under the Domain Name that could harm the goodwill represented by the CRICKET mark for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

87.     Defendant has used and continues to use the Domain Name to attract Internet

users to Defendant's commercial website that is laden with revenue-generating advertisements and links.  Using a domain name containing another party's trademark to operate a website that generates advertising and click-through revenue is not a bona fide offering of goods or services, nor a noncommercial fair use of the domain name.

88.     Under such circumstances, the fact that Defendant's website may also contain some token fair uses relating to the sport of cricket is insufficient to grant Defendant a "legitimate interest" in the Domain Name.

89.     Thus, Defendant does not use the Domain Name in connection with a bona fide offering of goods or services, Defendant is not making a noncommercial fair use of the domain name, and Defendant has never been known as or referred to as Cricket.  As such, Defendant has no legitimate interests in the Domain Name.

90.     Defendant is using a domain name containing Cricket's name and trademark to operate a website that generates advertising and click-through revenue, and which misdirects users searching for Cricket to competitors' websites.  This is not a bona fide offering of goods or services, nor a noncommercial fair use of the domain name.

91.     Defendant's actions constitute a violation of Lanham Act § 43(d), 15 U.S.C. § 1125(d).  Cricket has been, is now, and will be irreparably harmed by Defendant's aforementioned acts, and, unless enjoined by the Court, Defendant's unauthorized use of the Domain Name will continue, and there is no adequate remedy at law for the harm caused by the acts alleged herein.

## FOURTH CAUSE OF ACTION

### (Unfair Unlawful and Deceptive Business Practices –

### Cal. Bus. & Prof. Code §§ 17200, *et seq*.)

92.     Cricket incorporates herein by reference each and every allegation in the preceding paragraphs.

Case No.

93.     Defendant's business practices alleged above are unfair and offend public policy as they are unlawful, unfair, unscrupulous, and substantially injurious to Cricket and to consumers.

94.     The above acts by Defendant constitute unfair competition and unfair business practices in violation of the §§ 17200, *et seq.* of the California Business & Professions Code, prohibiting unfair, unlawful and deceptive business acts.

95.     Pursuant to California Business and Professions Code §§ 17200, *et seq.*, Cricket is entitled to enjoin these practices.

96.     Without injunctive relief, Cricket has no means by which to control Defendant's deceptive and confusing use and advertising of its mark.  Cricket is therefore entitled to injunctive relief prohibiting Defendant from continuing such acts of unfair competition, and appropriate restitution remedies, pursuant to California Business and Professions Code §§ 17200, *et seq.*

### FIFTH CAUSE OF ACTION

### (Common Law Trademark Infringement)

97.     Cricket incorporates herein by reference each and every allegation in the preceding paragraphs.

98.     Defendant's unauthorized use of the CRICKET Mark in interstate commerce and in this judicial District in connection with the advertising and promotion of wireless telecommunications goods and services constitutes a false designation of origin, a false and/or misleading description of fact, and/or a false or misleading representation of fact which constitutes an infringement of Cricket's trademark rights in and to the CRICKET Mark, and is likely to cause confusion, and mistake, and/or deception as to the affiliation, connection or association of Defendant and Cricket, and/or as to the origin, sponsorship, or approval of the wireless telecommunications goods and services advertised and promoted on Defendant's

website.  Defendant's actions have caused, and will continue to cause, irreparable harm to Cricket.

99.     Defendant's advertising and promotion of wireless telecommunications goods and services under the CRICKET name, mark and domain in interstate commerce and in this judicial District constitutes a false designation of origin, false and/or misleading description of fact, and/or false or misleading representation of fact which infringes Cricket's trademark rights in and to the CRICKET Mark, and is likely to cause confusion, and mistake, and/or deception as to the affiliation, connection or association of Defendant and Cricket, and/or as to the origin, sponsorship, or approval of the wireless telecommunications goods and services advertised and promoted on Defendant's website.  Defendant's actions have caused, and will continue to cause, irreparable harm to Cricket.

## SIXTH CAUSE OF ACTION

### (Unfair Competition in Violation of California Common Law)

100.     Cricket incorporates herein by reference each and every allegation in the proceeding paragraphs.

101.     Defendant's conduct, as alleged above, constitutes unfair competition under California State common law.  Defendant's acts are likely to cause consumers to mistakenly believe that the wireless telecommunications goods and services advertised and promoted on Defendant's website are somehow related to or associated with, or sponsored or endorsed by, Cricket.

102.     By reason of these acts, Cricket has suffered and is suffering actual, permanent and irreparable injury, the extent of which is presently not known, and Cricket will suffer continuing damage and irreparable injury unless Defendant is permanently enjoined from the use of the mark.

103.     On information and belief, Defendant's actions have been willful, malicious and

20                                    Case No.

fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

104.    Cricket incorporates herein by reference each and every allegation in the proceeding paragraphs.

105.    Defendant has received the benefits of the CRICKET Mark by placing numerous revenue-generating links and advertisements on its *<cricket.com>* website which relate to Cricket and its competitors in the telecommunications industry.  On information and belief, Defendant has earned significant click-through revenues due to the fact that many Internet users have accessed Defendant's website under the mistaken impression that the site is associated with or sponsored by Cricket, and have clicked on such links and advertisements.

106.    Defendant has received the benefits of the CRICKET Mark without compensating Cricket for such benefits or paying Cricket any royalties for using Cricket's intellectual property.

107.    Defendant has unjustly retained the foregoing benefits.

108.    By reason of the foregoing, Defendant has been unjustly enriched, and continues to be unjustly enriched, in an unknown amount, and Cricket is entitled to restitution.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Cricket respectfully requests that this Court enter an Order granting the following relief:

a)    For judgment that the CRICKET Mark has been infringed by Defendant's use of the CRICKET name, mark and domain;

b)    For judgment that Defendant has unfairly competed with Cricket in violation of 15 U.S.C. § 1125(a);

Case No.

c) For judgment that Defendant has committed cybersquatting in violation of Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

d) For judgment that Defendant's acts offend public policy and are unlawful, unfair and unscrupulous and substantially injurious to Cricket and its customers in violation of §§ 17200, *et seq.* of the California Business and Professions Code;

e) For judgment that Defendant has unfairly competed with Cricket in violation of California common law;

f) Permanently enjoining Defendant and each of its agents, employees, servants, officers, directors, successors in interest, heirs, assigns and all persons, firms or corporations, acting by or under their authority, in active concert or privity or in participation with it, from using the CRICKET name, mark and domain, or any confusingly similar marks on or in connection with wireless telecommunications goods and services and the promotion thereof (including the posting of advertisements, links and articles relating to wireless telecommunications goods and services); or using any word, words, phrases, symbols, logos, or any combination of words or symbol that would create a likelihood of confusion, mistake, or deception therewith, including, without limitation, the CRICKET name, mark and domain, in connection with or in the marketing, offering, selling, licensing, displaying, advertising, or developing of wireless telecommunications goods and services and the promotion thereof (including the posting of advertisements, links and articles relating to wireless telecommunications goods and services);

g) Permanently enjoining Defendant, its officers, agents, employees, and all persons acting in concert with them, from infringing the CRICKET Mark and/or engaging in further such unlawful acts and from reaping any additional commercial advantage from the misappropriation of the rights of Cricket and all affiliated and related companies of Cricket in the CRICKET Mark and the registration of this mark;

h) Requiring Defendant to destroy, at its sole and exclusive cost, all materials in its

22                                                            Case No.

possession or under its control that bear the CRICKET Mark or any confusingly similar mark;

i)  Declaring, adjudging, and decreeing that Cricket is the sole legal and equitable owner of the *<cricket.com>* domain name;

j)  Directing that the *<cricket.com>* domain name be transferred and registered to Cricket;

k)  For all actual damages sustained by Cricket as the result of Defendant's acts of infringement, together with prejudgment interest, according to proof, pursuant to 15 U.S.C. § 1117;

l)  For an accounting of the profits of Defendant resulting from its acts of infringement pursuant to 15 U.S.C. § 1117;

m)  Such damages and profits to be trebled and awarded to Cricket pursuant to 15 U.S.C. § 1117 on the grounds that Defendant's conduct has been willful, deliberate and in bad faith;

n)  For an award of attorneys' fees pursuant to 15 U.S.C. § 1117 or as otherwise permitted by law;

o)  For Cricket's costs of suit, including its reasonable litigation expenses, pursuant to 15 U.S.C. § 1117;

p)  Ordering Defendant to pay Cricket damages for common law trademark infringement, unjust enrichment and unfair competition under California common law;

q)  Ordering Defendant to pay Cricket damages for unfair, unlawful and deceptive business practices in violation of §§ 17200, *et seq.* of the California Business and Professions Code;

r)  Directing Defendant to file with this Court and serve on Cricket within thirty (30) days after service of such injunction, a written report under oath pursuant to 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendant has complied with the injunction; and

Case No.

1    s)   Granting Cricket such additional, other, or further relief as the Court deems just and

2         proper.

3

4                              **DEMAND FOR JURY TRIAL**

5         Plaintiff demands trial by jury on all issues so triable.

6    DATED:  February 18, 2011                    Respectfully submitted,

7                                                 FISH & RICHARDSON P.C.

8
                                                  By:  /s/ Lisa M. Martens
9                                                      Lisa M. Martens, Esq.
                                                       Andrew M. Abrams, Esq.
10
                                                  Attorneys for Plaintiffs
11                                                CRICKET COMMUNICATIONS, INC.

1

**<u>Exhibits</u>**

2

Exhibit 1……………………………………………………………Page 25

3

Exhibit 2……………………………………………………………Page 40

4

Exhibit 3……………………………………………………………Page 44

5

Exhibit 4……………………………………………………………Page 48

6

Exhibit 5……………………………………………………………Page 52

7

Exhibit 6……………………………………………………………Page 58

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.

℠JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CRICKET COMMUNICATIONS, INC.

**DEFENDANTS**
GLOBAL CRICKET VENTURES

**(b)** County of Residence of First Listed Plaintiff   Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Mauritius
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Lisa M. Martens, Andrew M. Abrams FISH & RICHARDSON PC
12390 El Camino Real, San Diego, CA 92130 Tel: 858-678-5070

Attorneys (If Known)   **'11CV0345 LAB WVG**
Holly Pranger, PRANGER LAW GROUP
3223 Webster Street, San Francisco, CA 94123 Tel: 415-885-9800

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        (U.S. Government Not a Party)

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Trademark Infringement, Unfair Competition, Cybersquatting, Title 15 U.S.C 1114(I), 1125(a) and 1125(d)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE
02/18/2011

SIGNATURE OF ATTORNEY OF RECORD
*Lisa M. Martens*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____